All rise. The U.S. Appellate Court of Second Division is now in session. The Honorable Justice Rita Van Tine is presiding. Hello, good morning everyone. Please be seated. Can you please call the first case? May I have the clerk? She's over there. 1-23-0522 versus Kahill and Sloan. Okay, will the attorneys please step up? Good morning, counsels. Would you please identify yourselves? Say your names slowly, starting with the appellant, and spell it for us. Good morning. My name is Adrienne Sloan, S-L-O-A-N. I'm with the Office of the State Appellate Defender, and I represent Khalil Kahlon. Good morning. Dan Pivovarchuk on behalf of the people. Pivovarchuk, P as in Paul, I-W, O-W, A-R, C as in Charlie, Z as in Zebra, Y-K. Great. So each side will be given 15 minutes. Counsel for the appellant, Ms. Sloan, how do you wish to divide your time? Can I just reserve five minutes, please? Okay, sure. Okay, Ms. Sloan. Good morning, Your Honors. May it please the Court?  Again, my name is Adrienne Sloan with the Office of the State Appellate Defender, and I represent Khalil Kahlon. The case against Khalil Kahlon was purely circumstantial. Khalil was convicted and is likely spending the rest of his life in prison based on the testimony of Victoria Hutchins and some vague conversations from Facebook Messenger. The State bolstered this sparse evidence against Khalil with a Facebook Live rap video from which it cherry-picked certain comments, urging the jurors to consider the video as Khalil's confession. Are you suggesting that there was certain points that were actually relevant when you say they cherry-picked? No, Your Honor. This video was not relevant because it didn't actually describe the details of the crime at issue. It was extraordinarily prejudicial, however, and that's why its admission deprived Khalil of a fair trial. I want to start out discussing the prejudicial effect of the video. So first of all... Can you go back to your relevancy argument? Of course. How is it that it would not be relevant if the video uses the names or nicknames of the defendant, his co-defendant, and both victims, as well as refer to, you know, mama being blue, and other things? Your Honor, the rap does not name the decedents in this case whatsoever. The rap does talk about a shooting. However, it's a shooting with a different gun than that which was used in this crime. Other than that, there's a couple of details which on first blush might sound like they're relevant, but they're really too general for that to be so. For example, you're right that the rap talks about the decedent's mother being sad. That's true for most murder cases. And the rap does talk about the woods, but the woods, even according to the state's facts, was a place that Khalil and his friends and classmates were known to hang out. Irrespective of its tie to this crime, it would be expected that the woods would be a part of Khalil's rap song because it was a part of Khalil's life. Shouldn't the trier of fact, the jury, be able to decide what is relevant, and wouldn't they be free to disregard it if they didn't think it was? Well, not as a prejudicial effect outweigh the probative value here. And again, there is no probative value because the rap, it's propensity evidence, really. It tells the jury that Khalil's a bad person, that Khalil's a violent person, but it doesn't actually describe the details of the crime. Didn't the trial court give two direct and limiting instructions about this particular piece of evidence? So while there was a limiting instruction, yes. Which one are you referring to? There were actually two. While there were two limiting instructions, these instructions really can't outweigh the enormous prejudice of this video. Which case would you cite? I mean, first of all, let's talk about the instructions. The one that I'm thinking of is that the court advised the jury that the defendant, you have evidence that the defendant made a statement. Then the instruction goes on to say, you can consider, I'm just paraphrasing, all the circumstances under which it was made, whether any of the statements were actually made, and what weight to give those statements. Now, you're saying that was like a worthless instruction? I'm saying it was not enough to outweigh the enormous prejudice of the video here. And what case could you guide us? So I would point to the Illinois Supreme Court case of People v. Bush. I think that when we look at the facts of Bush, and in Bush, I believe there was a limiting instruction as well. What was that instruction? I don't recall reading that in Bush. You know, I don't know. I think you talked about Bush, actually. Did you do your opening or your reply brief? Oh, we did cite Bush in the brief, yes. In your reply brief, you cited the appellate decision in your opening brief, but I don't recall what you said in reply. So I think Bush is really useful to the analysis here, and I think the reason for that is if you look at the facts in Bush that lent the court to find that there was this strong nexus between the rap lyrics and the crime, you can see that the rap in Bush was far more detailed than in our case. So in Bush, the defendant stated the names of the complainant in his rap. That is not the case here. In Bush, the defendant stated the name, the date of the crime in his rap. That is not the case here. In Bush, the defendant repeatedly stated that he was recounting true facts and telling a true story, and the court in Bush used all that to find the rap admissible because it was a historical recounting of the facts of the crime the defendant was on trial for. Here, by contrast, again, decedents are not named. The details of the crime aren't discussed. There are many details that are discussed that have nothing to do with the crime whatsoever but are extremely prejudicial. What would those be? So particularly the fact that he calls himself a shooter, extremely prejudicial, too general to be related to this specific crime. The fact that he talks about drug use, drug dealing, there's no showing that this crime was drug motivated. The fact he talks about machine guns, the fact he talks about... Where did he reference machine guns? I believe he referenced machine guns when he said he fired 200 to 300 shots using guns like are used in the Army, which, again, it's inconsistent with the trial. Actually, isn't there like a break where the jury could have interpreted, and we don't really know that they ever even considered this at all, he said something like shooting two and then he moved on two. So, I mean, you're giving us your interpretation, aren't you? I don't have the words in front of me. So I think, and this is veering a little bit over into the second argument in the brief, but I think what's so dangerous also about this rap is that the state here was allowed to put in its lyrics that it believed that Carrillo was stating, and the jury had those lyrics, and the lyrics went back with the jury, so the state really had the opportunity to use this rap to its advantage in the best way possible. Didn't the court instruct on that as well? The court did instruct on that. Where did the captioning come from? We have no idea where the captioning came from. At this point, are you disputing that the captions are inaccurate, or do they actually reflect what is said in the video? So there are certain portions of the captions that we did dispute as decidedly inaccurate. That said, the more all-encompassing problem with this is that there are many parts of the rap that are very, very unclear, and by using the captions, by putting the captions on the screen with the video, the state was allowed to insert what it wanted these unclear things to say, which comported with its theory of the case. The prejudice was enormous here because of that. It was only compounded by the lyrics. And defense counsel did not dispute at the trial level anything about the accuracy of the lyrics. That's correct, Your Honor. We're raising that second argument as ineffective assistance of trial counsel for that reason. But you're saying that they were inaccurate. There are inaccuracies. Can you tell me what was inaccurate? Yeah, so there's just many things in the video that don't really make sense. There's the word mew, which has no relationship to the offense. There's the word taco, which doesn't make sense. I think another thing. But how does that hurt you? I mean, if they're naming somebody who has nothing to do with anything, that's not it. Mewing is something high school kids do all the time, right? That's what I read. So I suppose what really hurts us about this is that while maybe we can't point to specific things that we believe it said, contrary to what the state believed that it said, there are things that are very unclear, and the jury got the state's version. For example, one thing that really does hurt the case is that the state's lyric, I belong a coup. First of all, that doesn't make sense. I belong a coup. Would you really think about one minute more? Do you really? When you said that it doesn't make sense, are you suggesting that the lyrics are something that aren't grammatically correct and that we should be ignoring them? No, I'm suggesting that it's unfair for the state to get to insert what it believes the lyrics are, particularly where this insertion is the most prejudicial interpretation of the rap possible for Khalil. I would just point out the state also extensively discussed the rap, which made it even more. When did they extensively discuss the rap? So in the rebuttal closing argument, the state did go line by line through the rap, using the portions of the rap which did seem that it could. You know what? We're going to have to address something else. One, you recognize this as an abuse of discretion standard, the most deferential standard of review. So we have to determine that no reasonable finder of fact would have concluded that this was relevant. Correct? Yes. All right. Well, let's get to the next thing that I want to point out or ask about is that the state has argued that if this was an error, that it was harmless. And there's three different grounds for harmless error. And, of course, the burden rests with the state. So how do you suggest that this was not harmless? I think it was absolutely not harmless, Your Honor. The state used the rap to tie together its entire theory of the case. While the jury did get a limiting instruction, the state called this rap Khalil's confession. The state, again, went line by line in closing argument, talking about the rap. The state used elements that seemed to fit the offense to tie together its entire theory, but it completely ignored the numerous elements that did not fit. I just want to, again, point out the differences between this case and Bush that really demonstrate that there is not a strong nexus here. Along with the fact that in Bush the defendant extensively and detailedly described the entire crime, there's nothing about the rap in Bush that doesn't fit. Here there's a lot that doesn't fit. Khalil was not rapping about this crime. He wasn't rapping about things that were prejudicial. It's propensity evidence. The rules of evidence exist, so that propensity evidence isn't given to the jury. It's simply too prejudicial. It convinced them to convict him because they believe that he was a bad person, he had poor character, he was violent, rather than because of the facts of this offense. The rap was not relevant, and it prevented for Khalil from having a fair trial. If there are no other questions, I assume I don't have time for questions. Yes, you've gone two minutes over, so your opposing counsel, the State, will be given an additional two minutes. Understood. Thank you. Good morning, Your Honor. Good morning. May it please the Court. Because opposing counsel addressed issues one and two, I'll focus on those as well, but I would be happy to address any questions Your Honors have with regards to issues three and four also. With regard to issue one, the admission of the rap video was not an abuse of discretion. The trial court had to make two determinations, whether or not the video was relevant and whether or not that relevance was outweighed by unfair prejudice. Relevance is a low standard. Did they actually end up doing that 402 analysis? Absolutely. There was a motion in limine that was held before trial. I believe it was a defense motion in limine to keep out the rap lyrics, and the trial court absolutely engaged in the exact balancing that is necessary here. Didn't they just assess the relevancy rather than actually weigh, go through the weighing process of whether it was substantially prejudicial? Well, so I would certainly rely on the record and offer my characterization of it. I do absolutely think that both the prejudicial aspects of it as well as the relevance were presented in the arguments of the parties. I believe that the trial court's ruling definitely reflected that it had considered those arguments, and the fact that its ruling reflected its belief that the relevance outweighed the potential for substantial. So, excuse me, the fact that the trial court determined that that relevance wasn't substantially outweighed by unfair prejudice is inherent in that court's ruling. So even though she didn't actually say the words. I'm not sure which words were necessary, but I definitely think that the court's ruling made clear. I think it said in Art 233 in the record where the judge used the words that the prejudicial effect would not be outweighed by the relevance. I don't know that we're looking for those particular words, but actually they're in that page of the record, Art 2233. And I would love to address both the relevance and the prejudice of this video. Let me ask you this. Would you agree that there are lyrics in here that are somewhat inflammatory, maybe more than somewhat inflammatory, that do not speak at all to the crime here? No on two points. First, I think that in the context of rap lyrics, I think these are relatively mundane. There are some words that I wouldn't eagerly use in court, but I think that in the context of rap lyrics, and specifically I would direct your Honor's attention to the cases that were favorably cited by the Bush court, the out-of-state cases concerning the admissibility of rap lyrics, the raps in those are incredibly vulgar, incredibly violent, oftentimes descriptive of blatantly irrelevant other crimes like sexual assaults in a murder case that has nothing to do with that. So I think in the context that we're talking about here, I wouldn't describe it as inflammatory. So referencing, for example, army-grade automatic weapons is not inflammatory to you? Well, the reference to a shooting is not unfairly prejudicial because it's the crime here. So it's not something that's – That's not what I asked you, talking about the weapons. He's talking about using army-grade automatic weapons. He doesn't use those words. I would agree that that's the gist of that particular phrase. But he's also smoking in the video. He's also smoking pot in the video, right? Yes, and I would point out that the people's theory of the case was that the defendant and co-defendant Ward lured the two victims into the woods on the appearance of smoking marijuana and then murdered them, shot each of them twice. I think that there is a little bit of hyperbole in the description of shooting. Well, but now we're getting a little bit away from incriminating statements that are quasi-confessions. I mean, if you're saying that it was relevant that the jury saw him smoking pot because that was part of your theory of the case, that sounds a lot like propensity ethics to me. No, I'm not suggesting that. What I am suggesting is that what is maybe arguably prejudicial isn't so far afield of the circumstances that we're dealing with here for it to be unfairly prejudicial or substantially outweighed by unfair prejudice. There are some things that are relevant in there, but keep in mind this is just a one-minute long video, so it's short. It was only played once in this case, and the aspects of it that you're referring to, the fact that the defendant appears to have smoked something immediately before he starts rapping, isn't pointed out by anyone, it's not argued. So this is just a very small thing that does not substantially outweigh it. Do you think it should have been included, or do you think you should have edited it before you submitted it in the evidence? That was something that wasn't requested. It wasn't ever addressed. It wasn't ever addressed. Neither side even talked about the possibility of editing it or taking out words. I mean, that was really, it never came up. It never came up, and I think that given that opposing counsel, excuse me, given that defense counsel at trial was arguing that this video wasn't relevant, that it didn't so closely describe the details in this specific case, that the jury should absolutely ignore it as mere creative expression, given that argument, I think that it may have actually damaged the defense to have it clipped down to only the absolute essential aspects of it. I think it helped the defendant's argument that it should be ignored by having those little pieces of it that didn't directly key into the shooting. And that it was just played once, doesn't that draw even more attention to the captions that the State put in the video that your opposing counsel is saying is not completely accurate? No, I don't think that it does. I think that given that it's played only once, I think that what would naturally be an audience's first viewing would be paying attention to what they're seeing visually, not the letters at the bottom. If we're transitioning a little bit to that second issue, I do want to tell Your Honor that I think I can answer a question that was posed to opposing counsel, which is that the record reflects the prosecution added the transcription to the video. It was tendered to the defense early on in the case, so in an early court date in the record it shows that the prosecution states that this was added. And also what's admitted at trial is both the original rap video without the transcription and then a second copy that has the transcription. Is it your position that the video is a confession from the defendant or it's just relevant evidence that's not outweighed by substantial prejudice? It's absolutely a confession. The similarities here between what the defendant says in there and what happened in this case are very striking. But it isn't a confession. I did it. I did this crime. It's an access to the actual crime as opposed to just it could be artistic, right? I think it was fair to call it a confession in closing argument. If I were going to offer the most accurate phrase, perhaps inculpatory statement would be better. I definitely think it was an inculpatory statement. I think it was absolutely fair in closing argument for the prosecution to argue that it was a confession. And with regard to that, I want to emphasize the context of this video before I get into the actual content of the lyrics, because the context is essential to understanding how profoundly relevant this is. And I have two points on context. First is both defendants in this case and both victims were students at Fenger High School. And the video in this case was discovered by the police in the exact same manner that the bodies of the victims were discovered, and that's by phone tips from children, classmates of the victims and the defendants at Fenger High School, calling the mother of one of the victims, providing that information that then was provided by that mother to the police. So in this case, it's clear that the classmates at Fenger were ahead of the curve. They literally knew where the bodies were. And in this situation, when they saw this video on Facebook Live, they immediately recognized it as referring to the murders. They immediately contacted one of the murdered child's mothers, and that murdered child's mother then called the police, recorded the video, sent it on. It all happens immediate. We know it's immediate because this is Facebook Live, so these videos only last 24 hours. And, in fact, based off of what's shown on the actual video, it's clear that it's less than an hour between when the defendant put this on Facebook Live and when the victim's mother is recording the copy that got sent to the detectives. So if you want to talk about a close nexus of relevance, compare that with the cases cited by Bush, where you have police trawling through hundreds of hours of social media evidence or going through all the notebooks of a defendant that were found in his bedroom. It's not that. This is literally an essential part of the case, recognized as such by the people who are most impacted by it. The second aspect of the context that I want to emphasize is the fact that the defendant created this video just two months after the murders themselves and after the defendant himself was arrested and questioned about this murder and then released. So there's a close proximity in time between the crime and the lyrics, which makes the similarities between the lyrics and the crime very unlikely to be coincidental. I'd also point out that Bush itself, opposing counsel is talking about the facts of the rap in Bush. That's a very different situation. That was a situation where a defense witness had a rap video that was recorded about it. It's not the threshold level. You can absolutely have situations where rap lyrics are much less specific than in Bush and absolutely still meet relevance. I want to point out the five key aspects of the relevance of the video in terms of the lyrics. The video references BGN, which is the gang whose members include defendant and co-defendant Ward as well as both of the victims. Quote, don't come around no BGN and we won't fuck with you. Now it's true what opposing counsel said that while defendant names himself and his co-defendant specifically in the video, he doesn't by name reference the two victims, but he's referencing the gang that they belong to. He's referencing the failure of the victims to participate in BGN's gang war, which was the motivation in this case. It references going into the woods to smoke marijuana. It references shooting two victims. Quote, if you're with your homie, I'm blown leaving them covered too, unquote. And the rap ends, it ends with a reference to the sadness of the victims' mothers, which is particularly relevant in this case given the very active street level involvement of the two mothers and specifically one of those mothers in this case. And opposing counsel said, well, most murders do involve sad mothers. While that might be true, most rap lyrics don't involve discussing sad mothers. And that's why that sticks out. That's something that's a similarity here that goes directly to its relevance. With regard to prejudice, I want to point out that the jury did get instructed on implicit bias, IPI 1.01B, which urged them to resist jumping to conclusions based on personal likes and dislikes and to not be biased against any person based on their race or ethnicity. I think that's significant because one of opposing counsel's arguments is that there is something inherently prejudicial about rap lyrics. And we know from Bush that that's not the appropriate viewpoint, that in fact rap lyrics have to be assessed on their actual content and not on the fact that they happen to be a statement in the form of rap. So that IPI instruction is very general. In this case, shouldn't the judge have given a more specific limiting instruction, like focus only on the wording of the video that you believe is relevant? Not the defendant to the crime, something like that. I believe that that IPI, which has to be presumed the jury would follow, I think it's absolutely applicable to this, especially given the arguments in this case, defense arguments pointing out that just because the defendant made this rap video doesn't mean that he's necessarily guilty of this offense and urging them against that kind of prejudice. I would also, on that topic, point out IPI 3.06-3.07 that Justice McBride referenced, which does say that, tells the jury that it's for them to decide whether the defendant made the statement concerning the charged offense, and if so, what weight to give to it. You have about one more minute. What's that? You have one minute. With regard to the error here, if there were error, it would be harmless. There is absolutely a mountain of circumstantial evidence. The defendant told Victoria Hutchins that someone was going to die today and then saw the defendant and co-defendant Ward go into the woods, and then shortly thereafter she heard four gunshots. The victims were found in those woods with two gunshots on each. That was corroborated by Facebook Messenger conversations showing that the victims were meeting the defendants at that woods that afternoon. There is damning consciousness of guilt evidence here, including the defendant absurdly denying to the mother of one of the victims that he even knew one of the victims, even though it's well-documented that they were friends. Actually, just going back to that limiting instruction, that 3.0607, so that's typically given when there's a confession, right? I don't think it characterizes confession. It says you have evidence before you that defendant made statements relating to the offenses charged in the indictment. So doesn't that intrinsically assume that anything in the video is related to the charge? Absolutely not. In fact, the exact opposite, because immediately after that tells the jury, it's for you to decide whether the defendant made that statement, and if so, what weight to put on it. So they're being told that there's evidence being presented that there's a statement. In this case, unlike a typical case bill, quote-unquote, where a defendant is saying, I never made these statements, in this case the defendant isn't disputing that he actually made the statements. Right. But there's a clause that the judge can either put into the IPI instruction or not, and that clause is a statement related to the charged offense. And in this case, the jury is being instructed that it's for them to decide whether there was a statement made concerning the charged offense or not. And if they decide that it's not. I think given the context, given this particular case, my reading of that IPI, the only reason to include that first clause about whether or not the defendant made that statement regarding the charged offense would be because the jury could decide that it doesn't. Well, let's look at the second clause. It is for you to determine whether the defendant made the statements, nobody is disputing that he made the statements, and if so, what weight should be given to the statements. So it doesn't say, like, what weight, if any, should be given to the statements. What weight? Doesn't that imply that the judge is instructing the jury that they should give weight to the statements? No, because I believe that whether he made the statements there refers to the earlier description in that IPI instruction of evidence regarding statements of the charged offenses. Would that be the most natural reading of that instruction? No, I think it would be used differently in most cases. I think in most cases it would be used differently because in most cases it would be a question of whether or not the defendant actually made the statement. Let's say it wasn't on video or something. Right, right. But in a case like this where there's video, where he clearly made the statement, the only reason to give that first clause is because it's leaving open the possibility that they decide that it wasn't made about the offenses, and in that situation they wouldn't, and the clause, and if so, what weight, wouldn't even apply because they wouldn't reach what weight to give that evidence. Okay. I mean, the first sentence says the defendant made a statement relating to the charged offense, right? You have evidence before you. Yeah. So that's, it doesn't then say you can decide whether that is true or not. It says you can decide whether the defendant said it, which is not in dispute here, and how much weight to put on it. Okay, that's fine. The weight part is fine. But I think what Justice Van Tine is saying is that first sentence is leading the jury to a conclusion that this statement related to the charged offense, when that is in fact a very hotly disputed issue between the state and the defense, right? The fact that evidence, it is. The fact that evidence has been presented doesn't mean that that is what the, that's what the final determination of the jury is, that they're going to believe that. And absolutely, it was clear to the jury that the defense was arguing that this wasn't about the murder and that the prosecution was cherry picking and that it should be ignored. And you have on the other side the prosecution arguing that it is relevant, going through the different points of relevance. And I think in that context with those arguments, I think this instruction does make clear that, and I don't know. Are you familiar with cases where the defendant makes a videotaped statement to the police with an assistant state's attorney present? I mean, you're familiar with that, aren't you? Yes. It does occur, doesn't it? Absolutely. And often doesn't it occur that the defendant doesn't testify, that the defendant doesn't make any kind of argument whatsoever about the statements, or the lawyer can argue that the judge will instruct you that you have heard evidence of the defendant making statements. It is for you to determine whether the defendant made the statements, and if so, if the defendant made the statements and what weight should be given to the statements. Are you familiar with those kinds of cases? Yes. Is there any instruction that you're aware of, any IPI instruction, that ever states that you have before you the evidence that the defendant made a confession? Is there such an IPI? No. Is there anyone that says even there's evidence before you that the defendant made an admission to the crime? Any IPI like that? No, there isn't. There is not. There is not the only IPI instruction that is given when a statement of any kind relating to the charge is made or argued by the state as part of their case, that this is the IPI to be given. Is that your understanding? That is my understanding. Okay. All right. Now, I think there's an argument to be made, though, by both justices, that the initial part of this instruction, which is a part of the instruction, does suggest to the jury that the defendant made statements relating to the offenses charged in the indictment. And there was evidence that was presented that a reasonable jury could find that. Yeah. But is the jury supposed to look at an instruction piecemeal? Or are they told in another instruction that you are to consider these instructions together? Anything like that? I'm not sure I follow that question. Well, there's a lot of general instructions that are given to every single jury. Right. Okay. So I think, I don't know, this instruction was never objected to. There's no claim on appeal now that this instruction was erroneous. So I don't know. There is no instruction that tells the jury, you know, that this defendant made a confession. The jury is not told that. They are simply told you have evidence before you that the defendant made statements relating to the offenses. And that's the state's, that was what the state's claim was. And they are told that you should consider the instructions as a whole. Yes. Not picking out some instructions and disregarding others. Correct? That's correct. Okay. I deeply regret having not brought up a copy of that instruction. I have that in front of me. I will note that. Well, you've paraphrased it pretty well. All right. I can read it to you. You have evidence. And Justice Van Tine already read it. Well, does it say what weight, if any? It does not. It just says what weight. What weight should be given. It says it's for you to determine whether this defendant made the statements. And if so, what weight should be given. The claim was that the state's position was these were statements related to the murder. The defense attorney argued this was simply rap music. It was a braggadocio, and it wasn't related at all. And that was the argument the defense made. Isn't that what happened at closing arguments? Yes. And it wasn't something that was highly emphasized. It was in four pages out of 22 pages of rebuttal. And it wasn't mentioned once in the 15 pages of the prosecution's opening close. So this wasn't a huge part of the people's case. As I mentioned, a mountain of circumstantial evidence, consciousness of guilt evidence. There's a reason why IPI 3.06-3.07 isn't mentioned in my brief or the defendant's briefs. And I hope that this oral argument doesn't give the court the impression that it's a more essential part of this case than it really is. It was called a confession. You called it a confession and your rebuttal closed. Yes, and that was an absolutely appropriate description based on the context and content. That's hardly a minor part of your argument. But when you have arguments. Wait a minute. Are you saying that it was inappropriate for the state's attorney to argue it was a confession? No, I said inappropriate, not inappropriate.  But even to myself, it sounded like inappropriate, so I tried to rephrase it.  Okay. But the thing is, though, that the arguments against this being a confession are much stronger and very well articulated in this case. So while the prosecution properly called it a confession, the defense properly said, this is just a teenager, you know, making a creative expression, and it should be disregarded. That's not the kind of argument that can usually be raised against a confession. So I think that it was, compared to most confessions, I do think this was a much smaller part of the case. And when you look at the overwhelming circumstantial evidence here, and the fact that Victoria Hutchins gave very damning evidence. She didn't say she saw him with the gun shoot him, but she says that the defendant and the co-defendant went into the woods, then the four gunshots, and then they swear her to secrecy afterwards. And beforehand, the defendant tells her someone's going to die today. This is really damning evidence. And that video from Facebook Live was just the. Who asked her to hold the phones? That was the co-defendant. If there are no further questions, and I appreciate this Court's patience. If there are no further questions. Any additional questions, Justice Ellis? For the reasons in our brief and those presented here, we ask that you affirm the defendant's convictions and sentence.  Rebuttal. Rebuttal. I just have a couple of points. The State just argued that the portion of the rap video discussing drug use is relevant. Because the people's theory of the case was that my client lured the decedents into the woods with the pretext of smoking. That's incredibly disingenuous, because the only place that that theory came from was the rap itself. Hutchins did not say that. The Facebook messages did not say that. So to say that this comports with the State's theory is unfair, because the rap is the only way that the State was able to make that theory. And that just illustrates how this error cannot be harmless. Are you sure there wasn't something in the text messages? I'm fairly certain, yes, Your Honor. That it simply came, the smoking aspect of it was a comment made in opening statements that came from the rap. What were they all meeting for? What's your interpretation of the text messages going back and forth? I don't think it's clear what they were meeting for. Your Honor, I think one part of the text messages that's important is that I don't think they can be fairly characterized as contentious. They're talking with each other. They're saying, where are you, to each other. They're trying to meet up at the park. But again, I think that aside from the Facebook messages, which is circumstantial, and the testimony of Hutchins, which is circumstantial, we only have the rap. What do you mean it's circumstantial? Parts of her testimony were circumstantial? You mean she didn't see these people? Was that circumstantial evidence? She didn't see the crime occur. Okay. So you have to concede, don't you, that some of her testimony was direct evidence in terms of placing these youngsters, these young students all from Banger at the woods, and that kids go there and smoke pot, that kind of thing. Was that ever suggested? And didn't she testify to putting them there shortly before she heard four gunshots ring out from the woods? She did place them. I would also say that she then saw the two boys come out. She referred to them as the two young men. I don't know exactly, but she knew their names, and she was familiar with them. And one of them was, in fact, her boyfriend. I'm sorry. I misspoke. I misspoke. Not her boyfriend. But she knew all four. Or she didn't know two. She didn't know the two, but only two came out. And the two that came out were whom? She was impeached, I believe, and I think she was inconsistent on whether she did see them come out after the gunshots. Didn't she testify that the two defendants came out and they were not, the other two did not come out? She testified, I believe, that they all four went in, and she heard several gunshots, and then she ran away, and they came over later. She also asked whether someone's going to die today. That was an inconsistency, because that only first came up at trial. She did not say that in the grand jury, and she did not say that when she was talking to the officer. I think something that's really striking about her testimony is that it becomes more and more incriminating as time goes on. What she says to the police is less incriminating to what she says in the grand jury is less incriminating than what she ends up saying at trial. Didn't she say she was really afraid and didn't want to be involved? She did not want to be there. She was in jail because she did not want to be there. And I think that, you know, can cut both ways. That said, this is not a case where we have forensics. This is not a case where we have DNA. This is not a case where we have someone who says that they saw this crime occur. It's circumstantial. And because of that, the fact that the state used this rap, they really used it to tie together their theory of the case. Key parts of their theory, again, came just from the rap. I also want to address counsel's point that the rap lyrics are relatively mundane. As we argued in our brief, this evidence is prejudicial at the outset simply because it's rap. And we know that certain members of society view rap as negative because of the genre. And that can have to do with racial bias. That inherent bias in rap is compounded by the inflammatory themes that my client stated. You know, he stated that his nickname was a shooter. He talked about a gang. He talked about drug sales. He talked about using army weapons. It's extraordinarily prejudicial. Finally, the state counsel did at any time during the pretrial or at any time before this was admitted into evidence, did the defense make any sort of attempt to truncate it, to say, hey, maybe some of these lines are arguably relevant as incriminating statements, but these other things like your example, the army grade machine gun reference, isn't. So can we cut it? Can we cut out the opening where he's smoking pot? Can we just cut that completely? Can we cut out some of these lyrics? Could we maybe just give a transcript of a few of the lines instead of the full transcript, maybe not hear it at all? Like there's a lot of ways you could cut this, right? There's a lot of different ways you could approach this. You could let the whole thing in. You could edit. You could show the lyrics. You could show only some of the lyrics. Did the defendant ask for any of those things, or was it an all-or-nothing just wee of jokes? Counsel did not ask for any of those things, and that's a sound trial strategy because this evidence wasn't relevant. Even the things that seemed like they may have had to do with the crime were too general to actually have been so. There was no relevance here, so counsel tried to get the entire rap out and then preserve the issue in a motion for new trial. This court can only uphold his conviction if this error was harmless. But your opposing counsel has made the argument that maybe that superfluous stuff that was not directly incriminating about this crime may have helped the defense to say, hey, this is blabber. This is a kid going off. Look, he obviously didn't have a machine gun. That wasn't true. Neither is this. This is what people do when they rap. They rap about really violent things. You know, that kind of thing, which is not entirely different from what the defense argued in closing argument. So how do you respond to that? I don't think that there's a world in which a jury who is determining the guilt of my client finds out that he wants to talk about machine guns, he wants to talk about moving product, he wants to talk about gang shit, that's helping. Why didn't the defense try to truncate it? I mean, I understand initially you moved to bar the whole thing. I get it. That is sound trial strategy. But once you lose, once the judge says, no, I find incriminating, potentially arguably incriminating statements within the lyrics, you know, references to the words, to phrasing, you know, all these things, at that point, why wouldn't the defense say, okay, fine, judge, then can we at least cut out some of this stuff? I would imagine if somebody had said to the court at that point, well, do we have to see him smoking weed at the beginning? I would think a judge might say, that's true. That really has nothing to do with anything. If you want me to cut that out, counsel, I will. I mean, but there was no opportunity given to do any of that. Again, we would argue that none of it had to actually do with the circumstances of this crime. All of it should have been cut out. It's all prejudicial. It has no probative value. It's not relevant evidence. The rules of evidence should not have let it in, in its entirety. As for the captions, we did argue in our second argument that counsel should have moved to remove the captions and was ineffective for not having done that. I think that one very useful thing that I would urge your honors to do is perhaps close your eyes and listen to the rap without the captions because it truly is, it's difficult to comprehend. Yeah, and a lot of what the state purports it to have said is not necessarily the case. Again, I just want to point out in Bush, counsel argued that Bush says that we should use relevance principles and we don't dispute that, but Bush also explicitly states that helpful to addressing relevance in the context of rap lyrics is whether there's that strong nexus, is considering whether the rap is a historical accounting of events rather than an admissible work of fiction. I think using both of those principles, this rap was far more prejudicial. It had no probative value and it was not admissible and its admission prevented Khalil from having a fair trial. Justice McBride, any additional questions? Justice Ellis? Thank you, counsel. Thank you. Thank you, counsel. So we will type the matter under advisement and confer with each other and you'll have a decision soon. I adjourn.